**[J-22-2025] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 12 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered July 17, |
| | : | 2023, at No. 619 WDA 2022, |
| v. | : | affirming the Judgment of |
| | : | Sentence of the Court of |
| | : | Common Pleas of Allegheny |
| JAMAR FOSTER, | : | County entered January 5, 2022, |
| | : | at No. CP-02-CR-0013992-2019. |
| Appellant | : | |
| | : | ARGUED: April 9, 2025 |

**CONCURRING OPINION**

**JUSTICE MUNDY**            **DECIDED: MAY 18, 2026**

I join the Majority's holding that "the totality of the circumstances at the time of appellant's investigative detention created reasonable suspicion justifying the stop." Majority Opinion, at 2. I write separately to express my disagreement with the Majority's criticism of the high crime area factor, which was briefly addressed by the panel below when discerning whether the seizure was supported by reasonable suspicion. In particular, the intermediate court agreed with the Commonwealth that the instant matter was akin to *Commonwealth v. Raglin*, 178 A.3d 868 (Pa. Super. 2018), where the court found that the facts presented, including the occurrence of the events in a high-crime area, supported a finding of reasonable suspicion that Raglin had been involved in the Shot Spotter-detected shooting. *See Commonwealth v. Foster*, 2023 WL 4557061, at *7 (Pa. Super. 2023). In my view, the Majority's rejection of the high crime area designation cited by the Superior Court in passing is arguably unnecessary, given that in this case,

there was sufficient reasonable suspicion to justify the stop. In fact, not only did appellant not probe the high crime area designation below, as noted *infra*, he conceded that the seizure took place in a high crime area. Despite this, the Majority goes as far as to declare that the evidence introduced regarding this factor was "so substantively and temporally vague" that it is "compelled to conclude a factual finding of a high-crime area is not 'supported by the record.'" Majority Opinion at 15-16. I cannot agree.

At trial, when asked if Manchester, the Pittsburgh neighborhood where the encounter occurred, was a "high crime area[,]" Officer Powers answered in the affirmative, testifying that from personal experience, this specific section had its "hot spots" for crime. *See* N.T., 10/1/20, 8-9. Importantly, this testimony was based on personal knowledge, as Officer Powers testified that he had been a City of Pittsburgh police officer for several years and, at the time, was assigned to the zone where the incident occurred. *Id.* at 3-4. As plainly acknowledged in *Commonwealth v. Lewis,* 343 A.3d 1016 (Pa. 2025):

> [A]n officer observing a hand-to-hand transaction on a street corner will naturally be more suspicious if he knows the corner is a hotspot for heroin sales than if the corner has no meaningful history of drug trafficking. … It would be simply illogical to expect officers to ignore those details, or to conclude that an officer's experience regarding them is not a relevant factor informing reasonable suspicion.

*Id.* at 1030-31 (internal citations and quotation marks omitted).[1] Indeed, while "certain evidence may be especially helpful to suppression courts in determining whether an area

---

[1] While our decision in this case may be instructive for future prosecutions, the parties and reviewing court in this case did not have the benefit of *Lewis*, which was only recently decided, and provided clarity with regards to this reasonable suspicion factor.

In any event, I disagree with the Majority's suggestion that Officer Power's testimony is akin to the "vague remark" that was purportedly rejected by this Court in *Lewis*. In that case, the officer "testified that the 'whole police service area" was "very well known for the high-crime rate we've had[,]' but gave no other relevant specifics" concerning the area at the time the incident occurred. *Lewis*, 343 A.3d at 1037. *See also id.* at 1023 (noting that the officer also "specifically mentioned there had been one homicide and multiple carjackings within [the area] *in the month preceding* the (continued…)

is high in crime[,] . . . these factors are discretionary, not mandatory, and it is ultimately up to suppression courts to determine if the Commonwealth has met its burden of proof." *Id.* at 1036. As the officer's statements in this case were not based on mere conjecture, they were, in my view, sufficient to establish that the area was a high-crime area.

This notwithstanding, assuming *arguendo* that the officer's testimony fell short in establishing that the area is known to be high in crime, appellant himself admitted that the seizure took place in a high crime area.[2] *See* Appellant's Brief to the Superior Court, at 41 ("[I]n a high crime area, that is urban in nature, with houses all along the block where

---

suppression hearing" (emphasis added)). By contrast, in the case *sub judice*, Officer Powers testified about the prevalence of crime in the specific section of Pittsburgh where the encounter took place, based on his personal experience as patrol officer in the area. *See* N.T., 10/1/20, 3-4, 8-9.

This aside, while we observed in *Lewis* that the officer's statement "is precisely the type of testimony suppression courts *should* be hesitant to accept[,]" *see Lewis*, 343 A.3d at 1037 (emphasis added), we stressed that it is within the "discretion of suppression courts to determine whether the Commonwealth has met its burden" of proving an area "is, in fact, high in crime." *Id.* at 1040. At the same time, we made clear that "[i]f the defense believes a claimed high crime area designation is overbroad or outdated, it is free to probe that issue on cross-examination." *Id.* at 1036 n.12. As indicated above, appellant chose not to probe this issue.

[2] In her dissenting opinion, Justice Donohue seemingly acknowledges this admission, *see* Dissenting Opinion at 5, n.4, but nevertheless finds the "high-crime nature of the neighborhood" to be "irrelevant to our analysis" on the basis that Officer Powers "never explained the relevance of such a fact to his suspicion that [appellant] was involved in criminal activity." *Id.* I disagree. At this juncture, we are tasked with discerning whether reasonable suspicion justified appellant's seizure. As articulated *supra*, the officer's knowledge of the area's high-crime nature, coupled with the surrounding factors, including the Shotspotter alerts, was pertinent in determining reasonable suspicion for the stop. Indeed, "this Court has long recognized a suspect's presence in a high crime area as a relevant factor in assessing reasonable suspicion." *Lewis*, 343 A.3d at 1029. This is because "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). *See also Commonwealth v. Hicks*, 208 A.3d 916, 951 (Pa. 2019) (explaining that the officer's description of the area of the seizure as "high crime" could "serve as [a] relevant contextual consideration[] in a totality of the circumstances inquiry").

police responded, the location of the ShotSpotter's alert was not reliable enough in and of itself to justify such immediate detention absent further corroboration"); *id.* at 60 ("Further, this interaction occurred in a high crime residential area with multiple houses nearby, . . ."). *See also* Appellant's Brief at 32 ("[E]vidence was entered into the record in [this] case that indicated that while Manchester is a high crime area, there are houses nearby indicating a residential component"); *id.* at 33 ("[G]iven the high crime nature of the area . . ."); *id.* at 38 ("No corroborative facts existed when [appellant] was seized which indicate he was engaged in criminal activity, save for the fact that he was present in close spatial and temporal proximity to a gun shot in a high crime area at night"). Considering this concession, I cannot join the Majority's rejection of this factor. Accordingly, I respectfully concur.